PENOBSCOT DEVELOPMENT COMPANY *vs.* WILLIAM SCOTT.

Aroostook.　　Opinion November 18, 1931.

*J. F. Gould,*
*Ballard F. Keith,* for plaintiff.
*Thomas S. Bridges,*
*J. F. Burns,*
*R. S. Shaw,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

PATTANGALL, C. J. On motion. Trespass *quare clausam.* Verdict for defendant. Plaintiff's declaration describes two tracts of land, both situate in Reed Plantation — the first being known as Section 23 in Southern Petitioners' Tract, containing five hundred thirty-six acres, eighteen acres having been conveyed to Mary Scott, wife of defendant, in 1910; the second being that portion of

two one hundred acre lots numbered 26 and 28 in the Squatters' Lots so-called which remained after conveying to defendant in 1910 a twenty-two and one-half acre strip thirty-six rods wide on the west end of both lots.

The particular trespass declared on, so far as Section 23 is concerned, is alleged to have occurred on January 1, 1930, and to have consisted in cutting and removing therefrom thirty-six cedar ties and three or four cords of spruce and fir wood. That declared on with regard to Lots 26 and 28 is alleged to have occurred on the same date and involved cutting and removing from these lots seven spruce and fir trees.

Defendant pleaded the general issue, but by his brief statement asserted title by adverse possession to the entire tracts described in plaintiff's declaration. The record title of the property is admittedly in plaintiff. It was acquired by purchase from the Springer Lumber Company in 1921, which traced its title to the original owners of the township through various mesne conveyances and partition proceedings.

The burden of proof of title by adverse possession being upon him who alleges it, *Landry* v. *Giguere*, 127 Me., 268, and cases cited, and defendant having admitted acts which, unless justified by his claim of title, constitute trespass, he is entitled to a verdict only on the theory that he has acquired title to the land on which they occurred.

The issue is clearly defined. If upon any reasonable interpretation of the evidence he has sustained the burden assumed by him, the finding of the jury must stand; otherwise not.

Concerning certain facts, there is no controversy. It appears that some forty years ago, defendant accompanied by his wife came to Reed Plantation and cleared a small tract of land on Section 23 on the westerly side of a highway leading in a general northerly direction from the settlement of Wytopitlock. Later this clearing was enlarged to include eighteen acres and extended across the highway so as to embrace a triangular piece of land containing approximately four acres on the easterly side thereof. Along both sides of this highway and south of defendant's clearing other settlers had located homes, among them being one Hardin Smith, who

occupied a strip of land east of the highway on the westerly portion of what later became known as Squatters' Lots 26 and 28.

None of these settlers occupied by right of purchase. They settled on the land, as did the defendant, in the manner of the early pioneers, built log huts from the trees which they cut down in making their clearings, after a time cultivated portions of the land, used some for pasture, cut firewood from the adjoining woods and logs for fences, generally occupying such of the territory as satisfied their limited needs, exactly as though they owned the fee.

The land was of small value and the clearings were not extensive. The owners of the township, after years had passed, recognized within certain limits the rights which were acquired by these so-called squatters, and the titles by prescription were in several cases confirmed by deed.

The deed of eighteen acres to defendant's wife included the original clearing on Section 23. The deed to defendant of twenty-two and one-half acres in lots 26 and 28 included land on which Hardin Smith settled and on which, after his death, defendant's father lived and died. These deeds are claimed by plaintiff to limit defendant's holdings.

His claim to more extensive ownership is based on the theory that irrespective of these deeds, he acquired by adverse possession the whole of Section 23, and that by continued adverse possession of Hardin Smith, his father, and himself, acquired title to the whole of Squatters' Lots 26 and 28.

It was incumbent on plaintiff, as a part of its *prima facie* case, to prove trespass by defendant during the period of its ownership. It offered no evidence in support of its allegation that defendant had within that time trespassed on lots 26 and 28. There was testimony that six or seven trees were cut on one of these lots, near the dividing line between them; but as to who cut them or when, the record is silent. Had the case involved these lots alone, regardless of the merits of the controversy between the parties as to title, the verdict, on this record, would have been justified.

There was testimony that since plaintiff purchased the land, defendant cut cedar ties on Section 23, in the vicinity of the eighteen acre lot, the record title to which was in defendant's wife and to

which defendant had apparently acquired title by adverse possession prior to the conveyance to her. The sole witness whom plaintiff called on this point testified that these trees were cut easterly of the lot and "might have been some of it cut westerly" thereof. Defendant, whom the jury had a right to believe, testified that they were cut "between me and the Mann land," evidently meaning between the eighteen acre lot and the east line of Section 23. This would apparently locate the cutting within the limits of the four acre triangle lying east of the highway, separated by it from the eighteen acre lot. The evidence is conclusive that defendant had acquired title by adverse possession to this small tract. This cutting, therefore, did not constitute a trespass.

There was, however, evidence offered by plaintiff that after it purchased the land, defendant cut wood "right along the road in 23." This could not be accepted as sufficient proof of trespass, even on plaintiff's theory, because defendant had unquestioned title to certain land along the road in Section 23. Plaintiff rested, therefore, without having proved any actionable trespass on the part of defendant, but defendant supplied the omission. He testified, in answer to a leading question by his counsel, that the wood which plaintiff's agent referred to as having been cut "right along the road in 23" was cut "just northerly of the eighteen acre piece," and that, even after having been forbidden to do so, he continued to cut and peel pulpwood at that point. This admitted an act of trespass, as charged in the writ, unless defendant proved his title to Section 23 aside from the land embraced in the eighteen acre lot and four acre triangle.

His claim, in that respect, rested entirely upon his unsupported evidence. The testimony of Mrs. Scott corroborated only their occupation and use of that part of Section 23 which made up the twenty-two acres comprising their farm and pasture and to Squatters' Lots 26 and 28.

He testified that the logs from which his house and barn were built and those that he used for fencing and firewood came from Section 23 but did not state whether from that part to which he unquestionably gained title by adverse possession or from the part in dispute; and there is no evidence that he cultivated, cleared,

fenced or used as pasture any other part of Section 23. The only use he had made of the land in dispute was to cut saw logs, poles, ties and pulpwood thereon at different times during forty years. Neither the exact location, the time of such cutting, nor the quantity cut is stated, but the fair inference from his testimony is that the operations were small and occurred at irregular intervals. They "comport far more nearly with acts of mere trespass than to actual occupation and possession." *Webber* v. *Barker*, 121 Me., 265.

But defendant contends that while the evidence would not sustain a finding that adverse possession at common law of the five hundred thirty-six acres of woodland had been proved, he is nevertheless entitled to a verdict by reason of the provisions of Sec. 10, Chap. 119, R. S. 1930:

> "To constitute a disseizin, or such exclusive and adverse possession of lands as to bar or limit the right of the true owner thereof to recover them, such lands need not be surrounded with fences or rendered inaccessible by water; but it is sufficient, if the possession, occupation, and improvement are open, notorious, and comporting with the ordinary management of a farm; although that part of the same, which composes the woodland belonging to such farm and used therewith as a woodlot, is not so enclosed."

The case therefore resolves itself into a single simple proposition. May one who acquires title by adverse possession to a twenty-two acre clearing in the forest sustain a claim of ownership to nearly a square mile of adjoining timberland simply because he has at various times during forty years cut an uncertain quantity of logs therefrom and converted them to his own use? The question answers itself. There is nothing in the record which would justify the conclusion that defendant's use of the premises in question "comported with the ordinary management of a farm," or that this extensive property was a mere woodlot, appurtenant to the modest estate which by praiseworthy energy and industry defendant and his wife had carved out of the wilderness.

*Holden* v. *Page*, 118 Me., 245, and *Power Co.* v. *Rollins*, 126 Me., 306, are relied upon by defendant. These cases are authority

for the statement that "when land is contiguous to improved and cultivated land and commonly used therewith for fuel, fencing, repairs or pasturing, it is no longer wild land." This statement of the law is unquestionably correct when applied to the facts involved in those cases, and title to such land may be acquired under the terms of the statute above referred to. But that statute, being in derogation of common law, must be strictly construed and it by no means follows that all land contiguous to improved and cultivated land to which title has been gained by adverse possession ceases to be wild land and becomes a woodlot in the purview of the statute simply because the owner of the improved land has cut fuel or fencing or lumber for repairing from a portion of it or used a part of it for pasture.

To so hold would enable a settler on a ten acre lot to acquire title to an entire township of timberland by exercising a limited dominion over a small portion of it. The land must be used in connection with the farm and be of such an extent and nature as to become a part thereof. Its use by the owner of the farm must be as a woodlot. The statute must be given a reasonable construction and the cases in which it has been considered by this Court have been decided on that basis.

While it is impossible to exactly define the line of demarcation between a woodlot and a tract of wild land, yet as a practical matter, there is usually no difficulty in distinguishing one from the other. There certainly is none in the case at bar. Evidence was offered tending to show that between 1903 and 1920 approximately 1,500,000 feet of logs were cut from this lot by parties holding the record title, and that it is heavily wooded at the present time. It could not be reasonably said that the five hundred thirty-six acres of timberland belonged to the twenty-two acre farm or, in the language of the statute, were "part of the same." *Adams* v. *Clapp*, 87 Me., 321. The size of the tract, the quantity of timber growing thereon, and the use made of it by defendant, are inconsistent with the ordinary conception of a woodlot. It was apparently wild land.

The testimony was voluminous and confusing. The simple issue involved was obscured by many controversies concerning collateral and unimportant matters. A study of the entire record, even

when viewed most favorably for the defendant, leads to but one conclusion. The verdict is not supported by the evidence.

*Motion sustained.*